GERTRUDE NICHOLS, ADMINISTRATRIX OF THE ESTATE OF DUANE NICHOLS, DECEASED, APPELLEE, v. J. EMMETT McARDLE, APPELLANT, IMPLEADED WITH STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLEE.

102 N. W. 2d 848

Filed May 6, 1960. No. 34692.

*Fraser, Wenstrand, Stryker, Marshall & Veach, Joseph Polack,* and *O'Sullivan & O'Sullivan,* for appellant.

*Wear, Boland, Mullin & Walsh* and *A. Lee Bloomingdale,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.
Gertrude Nichols as administratrix of the estate of Duane Nichols, deceased, seeks to recover by this litiga-

tion damages for the wrongful death of her husband, Duane Nichols, in the collision of an automobile operated by him with an automobile driven by appellant at or near the first intersection of highways south of the Waterloo overpass over the tracks of the Union Pacific Railroad Company on U. S. Highway No. 275, which collision and death were, as it is alleged, caused by the negligence of appellant.

The State of Nebraska, Department of Roads, was the employer of Duane Nichols at the time of his death and was made a party to the litigation because of subrogation rights it might have by virtue of the Workmen's Compensation Act of the state. It is named as appellee but it asserts no rights or interest in this appeal and will not be again mentioned herein. Gertrude Nichols as administratrix of the estate of Duane Nichols, deceased, will be designated as appellee and her decedent will be mentioned as deceased. The Ford automobile operated by the deceased at the time of the collision is described in the record as the patrol car and will be referred to as the Ford. The automobile driven by appellant at that time will be identified as the Chevrolet.

The collision of the Ford and the Chevrolet occurred at about 4:30 p. m., July 24, 1958, on U. S. Highway No. 275, hereafter spoken of as highway No. 275, at or near the first intersection of highways south of the Waterloo overpass and it was the cause of the death of the deceased. The heirs at law and next of kin of deceased are his widow and three minor children the ages of whom at the time of the collision were, respectively, 32 years, 9 years, 7 years, and 3 years, each of whom was dependent on deceased for their support and maintenance. The deceased was then 31 years of age; had a life expectancy of 40 years; was able-bodied, well trained, earning an income of about $4,800 per year; and was rendering valuable service, help, assistance, and support to his wife and children of which they were deprived by his wrongful death.

The specifications of negligence charged against appellant by appellee included in substance the following: Failure to stop his automobile before going upon highway No. 275; failure to make a proper turn upon said highway; his act in turning into and traveling upon the east lane of the highway south of the intersection while deceased was properly occupying and using the east lane, moving therein toward the north; failure to have and maintain a proper lookout for traffic and especially the vehicle driven by deceased on highway No. 275; failure to have his automobile under proper control and to respect the right-of-way of deceased; and the operation of his automobile on the east lane of highway No. 275 in disregard of his duty to traffic moving from south to north thereon. Appellee asserted that the acts and omissions of appellant mentioned in the specifications of negligence were a violation of the laws of the state.

The first cause of action of appellee seeks damages because of the alleged wrongful death of the deceased and the second cause of action is for the recovery of burial expense occasioned by his death.

The substance of the defense of appellant was a denial of the claims of appellee and a plea of contributory negligence of the deceased of a nature and in a degree sufficient to defeat and bar any recovery in the case by appellee. Appellee traversed the plea of contributory negligence made by appellant.

When the evidence was completed the trial court charged the jury that the evidence produced on the trial established that deceased was exercising due care and was free from contributory negligence at the time of the collision; that the death of deceased was proximately caused by negligence of appellant; that appellee was entitled to a verdict of the jury for the amount of damages, if any, caused the widow and children of the deceased which a preponderance of the evidence established they suffered by reason of the wrongful death

of the deceased; and that the only question for the jury to determine in the case was the amount it would award appellee on her two causes of action. The verdict was a recovery by the appellee on each of the causes of action. Appellant made a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, he having made a motion for a directed verdict at the conclusion of the evidence, which was denied. Judgment was rendered on the verdict and this appeal presents the record for review.

The motion of appellant for a new trial specified nearly a score of errors claimed to have occurred to the prejudice of appellant at the trial. His brief in this court assigns numerous errors. Appellant in his brief and during his argument at the submission of the case discussed only the alleged error of the trial court in resolving all issues in the case in favor of appellee as a matter of law except the amount, if any, appellee was entitled to recover a verdict for against appellant. In this posture of the case the issue on this appeal is whether the evidence establishes as a matter of law that the negligence of appellant was the sole, proximate cause of the collision resulting in the death of the deceased. If it does, the judgment must be affirmed.

Highway No. 275 extends north and south for a considerable distance on either side of the intersection near which the collision of the automobiles occurred and the town of Waterloo is a short distance north from it. Highway No. 275 has two concrete paved lanes each 10 feet wide, divided by a black line in the center of it. It is a level road from a considerable distance south of the place of the collision to a distance north thereof and the grade of the highway to the north then gradually rises until it attains an elevation of about 32 feet at the high point on the overpass which is about 875 feet north of the place of the accident and is known as the Waterloo overpass.

There is a graveled road which extends from north-

east to southwest on a slight angle near highway No. 275 but to the southeast of it. The graveled highway extends to and joins highway No. 275 at the east edge of the paved portion of it about 875 feet south of the south end of the Waterloo overpass. The graveled road about 100 feet from where it joins highway No. 275 curves or turns quite sharply to the right and joins highway No. 275 at a slight angle to the southwest but at substantially right angles. The graveled road terminates there. It was at or near the south line of the intersection of the two highways that the collision of the automobiles occurred which caused the death of the deceased. He approached the intersection from the south and appellant came to and on it at an angle to the southwest. The graveled road was substantially level with the paved portion of highway No. 275. There was a highway stop sign regulating traffic traveling on the graveled road toward highway No. 275. The angle on which it and the intersecting road approached each other was such that either of the motorists as they came to the intersection had a clear, unobstructed view of each other, the intersection, and its surroundings for an extensive distance.

A motorist traveling south on highway No. 275 soon after 4 p.m. the day of the tragedy said at the trial that as he came over the overpass at a speed of about 30 miles per hour there was a truck to the rear of him moving toward the south a distance of from 75 to 100 yards; that there was no traffic in front of him going south; that there were three or four vehicles to the south of witness traveling to the north; that the nearest approaching vehicle of that group was an automobile which afterwards was identified as the Ford operated by the deceased traveling at a speed of about 50 miles per hour a distance south of the place of the collision estimated by the witness to have been about 200 or 300 yards; and that witness first saw the Chevrolet going southwest on the traveled road when it was 20 or 30 feet from

highway No. 275 and he watched it continuously until the collision of it and the Ford. The Chevrolet was continuously in motion during the time it was observed by the witness. The Ford was, the witness thought, about 100 yards south of the place of the collision when he first saw the Chevrolet. However, the witness identified the location of the Ford at the time he first saw it by a post on the east side of highway No. 275 which continued there until the time of the trial and an actual measurement showed the distance was 176⅓ feet instead of about 200 or 300 yards as the witness estimated in his testimony. The Chevrolet was traveling quite fast when the witness first saw it but its speed was decreased and then suddenly increased "and the car spurted out." The witness said that he then knew there was going to be an accident and he shouted a warning. He was then 50 or 60 feet from the place of the collision and he immediately applied the brakes on his car as he saw the Chevrolet start accelerating its speed after it had slowed down. It reached the pavement on highway No. 275 and the accident immediately occurred. The Ford was traveling in the east lane continuously from the time witness first saw it to the time of the collision. It was only seconds from when the witness first saw the Chevrolet until the automobiles collided. The front of the Chevrolet was only a few feet from the east side of highway No. 275 when its speed was decreased and then suddenly accelerated. The Ford was something like 50 feet south of the place of the collision of the automobiles when the Chevrolet was on the extreme south or left side of the graveled road as it came on an angle to the southwest and entered highway No. 275 on its east side. The collision occurred immediately thereafter. The Ford was moving due north and the Chevrolet was traveling at a slight angle to the southwest, more south than west, as they met almost head-on in the east lane of highway No. 275. The Ford

was traveling about 50 miles per hour during the entire time it was observed by the witness.

A traveler who saw the collision of the Ford and the Chevrolet testified in substance: He was going north on highway No. 275 about 4:30 p. m. on July 24, 1958. Preceding him was a truck. A highway patrol car passed the witness and the truck about 300 yards south of the place of the accident. Witness then passed the truck and thereafter he maintained a speed of about 50 miles per hour. The patrol car was the Ford above mentioned and it was from 150 to 175 feet ahead of the witness after he passed the truck. The distance between them continued about the same until the time of the accident. The Ford was in the east lane of highway No. 275 and continued therein at a speed of about 50 miles per hour until the time of the accident. The witness first saw the Chevrolet on his right coming from the east when the Ford was probably 150 feet south of the place of the contact of the automobiles. The Chevrolet was then near highway No. 275, in motion at a moderate speed, and it did not stop after the witness first saw it. When the front of the Chevrolet was at the east edge of highway No. 275 the Ford was probably from 20 to 25 feet from the place of the accident and instantly the automobiles collided. The witness saw the brake lights on the Ford flash red and at practically the same time the collision happened.

A driver of a truck, traveling south on highway No. 275 near the south end of the Waterloo overpass at about 4:30 p. m. on the day of the accident, saw the collision. He first saw the Ford when it was an esti-mated distance of 300 yards south of the place of the collision, traveling north at a speed of about 50 miles per hour. When the Ford was probably 150 feet south of the place of the accident, witness saw the Chevrolet traveling from his left going southwest toward and near highway No. 275. When the front of the Chevrolet was about at the east edge of the highway the Ford

was an estimated 75 feet south of the place of the collision. Witness said the time between when he first saw the Chevrolet until the accident happened was like the time required to snap one's fingers. The Chevrolet did not stop from the time the witness first saw it until the accident. The collision of the automobiles was almost head-on notwithstanding the Ford was going due north and the Chevrolet was moving to the southwest on a slight angle.

The evidence locates the place of the collision of the automobiles in the east lane of highway No. 275 and somewhat south of the south line of the traveled portion of the road on which appellant traveled as it comes to and joins the east side of highway No. 275. There was a considerable quantity of debris in the east lane of the highway at the place of the accident, and north of it a few feet was a fresh mark or gouged out place in the pavement. One of the bumper guards of the Ford was knocked down. There were tire skid marks about 20 feet in length extending from the south to the north except at or near the end where they terminated and at that place they veered to the west and ended near where the Ford came to rest. The Ford after the collision was facing southwest in the west lane of highway No. 275 and about 7 feet north of it the Chevrolet was in the west lane facing northwest.

Appellant testified he was operating his 1954 Chevrolet on the day of the accident from Waterloo on the graveled road which extends from northeast to southwest and is easterly from but not parallel with highway No. 275. He said as he came to the part of that road where it turned westerly onto highway No. 275 he stopped at the stop sign to his right. He then drove onto highway No. 275. He said he did not know whether he looked to the right or to the left. He was asked if he saw the patrol car and his answer was: "From then on I don't know anything." He did not know whether he hit the Ford and did not remember any impact,

crash, or collision. There was no additional effort of appellant to explain or account for the collision of his Chevrolet and the Ford.

Appellant testified by deposition before the trial of this case in other litigation against him resulting from the collision herein involved that he had no remembrance or knowledge of anything that happened prior to, at the time of, or after the accident, the subject of this litigation, except "I recall laying there and seeing people going by and looking. I knew there was something up." This obviously refers to an event after the collision. When appellant was asked if he had any recollection about the collision or what happened he answered he could not remember anything of it. Later in his testimony he said he did not know anything about the accident or what happened prior to it. He in substance repeated that near the end of his testimony in the present case after he had said previously that he remembered he stopped at the stop sign near the intersection of the road on which he traveled with highway No. 275.

In the Chevrolet riding with appellant was James Edward Rodgers, herein called Rodgers. He joined appellant at Waterloo and said the trip was uneventful until they approached the intersection of the road they were traveling on with highway No. 275. Rodgers would not say that appellant stopped at or because of the stop sign on the right side of the road on which they were traveling. He estimated the speed of the Chevrolet on the trip was from 20 to 25 miles per hour. He said as appellant approached highway No. 275 but before he got to the intersection he decreased the speed of his automobile and slowed down. Then suddenly the automobile lunged to pull onto the highway. He testified the Chevrolet was slowed down before it reached highway No. 275 and then the speed of it was suddenly increased as it went onto the highway and continued at the accelerated speed until the collision. He said there was no reason apparent for what appellant did at that

time. Witness saw the Ford and instantly the collision happened.

The automobiles collided some feet south of the south line of the intersection wholly in the east lane of highway No. 275. It was almost a head-on contact of the automobiles. Deceased was operating the Ford traveling north in the east lane of the highway at a speed estimated by all of the testimony on the subject at not more than 50 miles per hour. He was and had been for several years fully informed concerning the highway, its intersections, the stop sign for the control of traffic from the graveled road mentioned herein to and upon the intersection near which the tragedy concerned herein occurred, and all of the surroundings of the intersection. It was an open one and any traveler within the vicinity of it had an opportunity for clear and unobstructed vision for an extensive distance desired by a traveler towards or upon the intersection. The accident happened in the daytime while favorable and pleasant conditions existed. There was no evidence that deceased was not exercising due care in the operation of the Ford on highway No. 275, a favored road, on the day of and at the time of the collision. In this situation a presumption prevails that the deceased was exercising due care. There is, in the absence of evidence to the contrary, a presumption that a motorist in approaching a favored highway intersection acted with due care. Bell v. Crook, 168 Neb. 685, 97 N. W. 2d 352. The deceased as a traveler on a favored highway approaching an intersection protected by a stop sign of which he had knowledge was legally privileged to assume that oncoming traffic would obey the stop sign and perform all other obligations imposed by law upon any traveler about to enter upon such an intersection before he did so. A traveler on highways may assume, unless and until he has warning, notice, or knowledge to the contrary, that any other user of the highways will use them in a lawful manner; and until he has such warn-

ing, notice, or knowledge, he may govern his acts in accordance with such assumption. Paddack v. Patrick, 163 Neb. 355, 79 N. W. 2d 701; Egenberger v. National Alfalfa Dehydrating & Milling Co., 164 Neb. 704, 83 N. W. 2d 523; Bell v. Crook, *supra.*

Appellant as he approached the intersection was to the right of the deceased. When the Chevrolet was near to the intersection appellant decreased the speed he had been traveling as if he were going to stop but instead he suddenly accelerated the speed of his automobile, drove onto the intersection and south into the east lane of highway No. 275, and collided almost head-on with the Ford. There is undisputed evidence that the Ford was only about three car lengths or 50 feet from the place of the collision when appellant accelerated the speed of the Chevrolet and drove it into the path of the Ford as it was traveling north at about 50 miles per hour. This was graphically expressed by an eyewitness who said that appellant "no sooner hit the pavement than he hit the Patrolman." The conduct of appellant instead of tending to warn or indicate to deceased that appellant was intending to enter the intersection in front of deceased, on the contrary, because of the slowing down of the Chevrolet, was an indication that appellant was going to stop and give the deceased safe passage across the intersection. The view of appellant to the south down highway No. 275 as he approached the intersection was unobstructed for an extensive distance. Appellant by his admission was very familiar with the intersection, knew that highway No. 275 was the principal highway in that area, and that it carried heavy and frequent traffic. The hazard of entering that highway from the secondary road at the time appellant did was obvious. There were the Ford; another automobile; and a large truck, a tractor and trailer unit, traveling toward the intersection. Each of them apparently was traveling at about the same speed, 50 miles per hour. The companion of appellant, James

Edward Rodgers, said that as the automobile of appellant was coming to the intersection he, Rodgers, saw an automobile going north on highway No. 275 cross the intersection: "—it just flashed across."

Appellant does not claim that he looked either to the right or the left when he came to and drove upon highway No. 275 with total disregard of the traffic then thereon. Appellant was obligated when he approached highway No. 275 which was protected by a stop sign to stop as directed thereby before going upon it, to look both to his right and left, and to permit any traffic to pass which was at a distance and traveling at a speed that was dangerous for appellant to have moved forward onto the highway. Bell v. Crook, *supra*, declares: "The driver of a motor vehicle approaching a highway protected by stop signs must stop before going upon it, look to his left and to his right, and permit vehicles to pass which are at a distance and traveling at a speed that it would be imprudent for the motorist to proceed into the intersection." See, also, Bezdek v. Patrick, 164 Neb. 398, 82 N. W. 2d 583; Paddack v. Patrick, *supra*.

Appellant was not only legally compelled to stop and to look in each direction for oncoming traffic on the highway before he went upon it but the duty imposed upon him as a motorist using the public highways was mandatory that he see what was then in sight and could and should have been seen by any normal person reasonably and effectively complying with this obligation.

Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501, states: "The duty of the driver of a vehicle to look for vehicles approaching on the highway implies the duty to see what is in plain sight."

In Cappel v. Riener, 167 Neb. 375, 93 N. W. 2d 36, this court said: "The driver of an automobile entering an intersection of two streets (or highways) is obligated to look for approaching automobiles and to see any vehicle within that radius which denotes the limit of danger. * * * If the driver of an automobile entering

an intersection looks for approaching vehicles but fails to see one which is favored over him under the rules of the road, he is guilty of negligence as a matter of law. * * * The operator of an automobile approaching or entering an intersection is required to see another automobile approaching or entering the intersection which has been favored with the right-of-way under the statutory rules of the road and a failure to see such favored automobile is negligence as a matter of law."

The observation of this court in Dale v. Omaha & C. B. St. Ry. Co., 154 Neb. 434, 48 N. W. 2d 380, is appropriate to this case: "From his testimony and its inescapable inferences the plaintiff came into this intersection in the path of a vehicle which was favored over him. He knew it was coming but a short distance away. If he looked he saw it in time to avoid the collision. It was his duty to look and if he failed to do so the consequences of his failure are his own." See, also, Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607; Eden v. Klaas, 165 Neb. 323, 85 N. W. 2d 643.

Appellant said while he was a witness that as he came to the part of the road on which he was traveling which turns westerly and joins highway No. 275 he stopped his Chevrolet automobile at the stop sign to his right as it required of any traveler in a like situation. He did not say that he looked to the right or to the left or that he made any effort to advise himself as to the situation of traffic on highway No. 275 at or near that location at that time before he drove his automobile onto the highway and to the collision which resulted in and caused the death of the deceased. Appellant had previously testified in litigation against him pending in another court involving the identical collision that he had no remembrance or knowledge of anything that happened concerning the accident prior to, at the time of, or after it until he came to lying alongside of the road after the collision. He offered no explanation of the

contradictory and inconsistent testimony given by him in the two cases. The assertion made on the trial of this case by appellant that he stopped his automobile at the stop sign before he entered upon the highway is not, under the circumstances, available to him in this litigation. A litigant may not recite upon oath one statement of fact in one judicial proceeding and thereafter, to meet the exigencies of the case in the trial of a different cause, recite an entirely different and inconsistent story. In such a situation the evidence is discredited as a matter of law and will be disregarded. Kirchner v. Gast, 169 Neb. 404, 100 N. W. 2d 65.

However, in the circumstances of this case, if appellant stopped at the stop sign, that fact would not change the result because there is no evidence he looked to advise himself of the traffic situation at or near the intersection. If he did look he did not see what was plainly in view which was not only the Ford but a second automobile and a truck approaching the intersection from the south in close proximity at a speed that made it not only imprudent but disastrous for a traveler to proceed into the intersection. Nothing could excuse his failure to see what was then plainly in view. If he did not see, then it must be concluded that he was not even mildly alert to the situation and hazard; and if he saw and did not avoid a collision, it must be decided he did not have required control. In either event, in the circumstances of this case, the conclusion must be that the default of appellant was the proximate cause of the collision and the results thereof. Armer v. Omaha & C. B. St. Ry. Co., *supra*. Negligence, which is the moving and effective cause of a happening, is the proximate cause thereof. Kennedy v. Chicago, R. I. & P. R. R. Co., 156 Neb. 345, 56 N. W. 2d 446; Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701.

Appellant argues that if one is in a place of safety and sees or could have seen the approach of a moving vehicle in close proximity to him and suddenly moves

from the place of safety into the path of such an oncoming vehicle, he is guilty of contributory negligence as a matter of law. It was appellant, not deceased, who was in a place of safety as appellant came toward highway No. 275 which was protected by a stop sign from traffic on the secondary or side road. It was appellant, and not the deceased, who was in a place of safety and saw or was charged with looking and seeing the approach of the Ford on the favored highway when appellant suddenly and quickly propelled his automobile from a place of safety into the path of and in collision with the Ford. The rule to which appellant appeals in this respect affords him no consolation or assistance. So far as he is concerned in this case, the rule is more of a sword than a shield.

Deceased violated no provision of the law of the road. He was in and maintained a correct position on highway No. 275 as he came toward the intersection at a speed of less than the prima facie lawful speed. He was traveling in open country. There was no condition present that required deceased to diminish his speed as he came toward the intersection. Appellant asserts that deceased was coming to a curve and a crest of a hill. The factual assumption in this argument is faulty. The overpass at its high point north of the intersection curves but the south end of the overpass is about 875 feet north of the place of the collision. The overpass was not in any way concerned in the collision.

In Moses v. Mitchell, 139 Neb. 606, 298 N. W. 338, the facts were the defendant was driving on highway No. 275 in the daytime at a speed of 55 miles per hour approaching an intersection with highway No. 130. Plaintiff was traveling in an opposite direction and had stopped incident to making a left-hand turn onto highway No. 130. A third party struck the rear of the vehicle of plaintiff and propelled it into the path of the vehicle of defendant. The court said concerning the speed of the defendant: "The day was clear and visi-

bility was good. Certainly, a speed of 55 miles an hour on a state highway in open country on a clear day is not of itself negligence." The court further observed in the opinion in that case: "As Mitchell approached the Moses car, he observed that it had come to a complete stop to permit him to pass. It was only when he was within 50 feet of the Moses car that he saw the Racine car strike it and shove it into his path. He applied his brakes immediately, the undisputed evidence showing that tire marks were burned on the pavement by the application of his brakes for a distance of 42 feet. That he was faced with a sudden emergency cannot be questioned. All the evidence is to the effect that only two to five seconds elapsed from the time the Moses car was struck until the Mitchell car crashed into it. We do not think that this evidence is sufficient to sustain a finding that Mitchell had a reasonable opportunity to avoid hitting the Moses car."

In Fairchild v. Sorenson, 165 Neb. 667, 87 N. W. 2d 235, the facts were the defendant was proceeding from the south on highway No. 103 at a speed not in excess of 55 miles per hour and was approaching an intersection with another highway. The highway on which defendant was traveling was protected by stop signs. The view to the south at the intersection was unobstructed for 500 feet. Plaintiff's driver came to highway No. 103 from the west and stopped at the stop sign. When defendant was 75 feet from the intersection plaintiff's driver proceeded into the intersection and a collision occurred. The court said: "There is no evidence * * * that the automobile in which the defendants were riding was being operated at any time in excess of 55 miles an hour or that it was being operated in an unlawful position on the highway. There was no evidence from which a reasonable inference could flow that the defendants had notice of danger in entering the intersection at the rate of speed and the manner in which their automobile was being operated as it approached the

intersection until Herman E. Fairchild drove his automobile into it."

In the present case deceased had no notice of danger which required him to reduce his speed below 50 miles per hour until appellant suddenly propelled his automobile into the intersection only an estimated 50 feet in front of deceased. He could hardly be charged with contributory negligence in not avoiding the collision which was clearly caused by the act of appellant.

The defense of contributory negligence on the part of deceased was not sustained by any evidence. The evidence is clear that the negligence of appellant as a matter of law was the proximate cause of the collision. The trial court decided all issues in the case as a matter of law except the issue concerning damages. It is the duty of the trial court to present to the jury only issues presented by pleadings and supported by evidence, and it is generally prejudicial error to submit to the jury issues which are not sustained by evidence. Simcho v. Omaha & C. B. St. Ry. Co., *supra;* Shields v. County of Buffalo, *supra.*

The judgment should be and it is affirmed.

AFFIRMED.