ROBERT TODD SCHAEFER, APPELLEE, v. DENNIS MCCREARY, DOING BUSINESS AS MCCREARY BROS. REGENCY MOTORS, AND WILLIAM CURTIS BONHAM, APPELLANTS.

345 N.W.2d 821

Filed March 9, 1984. No. 83-090.

740

Kennedy, Holland, DeLacy & Svoboda, for appellants.

Warren C. Schrempp and Frederick C. Gray of Schrempp, Hoagland & Gray, for appellee.

KRIVOSHA, C.J., CAPORALE, and GRANT, JJ., and CAMP, D.J., and COLWELL, D.J., Retired.

KRIVOSHA, C.J.

The appellants, Dennis McCreary, doing business as McCreary Bros. Regency Motors, and William Curtis Bonham, have appealed from a judgment entered by the district court for Douglas County, Nebraska, in favor of the appellee, Robert Todd Schaefer, and against the appellants and each of them. The action giving rise to this appeal was originally filed by Schaefer against the appellants for injuries allegedly sustained by Schaefer as a result of an automobile accident which occurred in Omaha, Nebraska, on or about October 31, 1975, when the vehicle being operated by Schaefer collided with a vehicle operated by Bonham and owned by McCreary Bros. Following trial, the jury returned a verdict in favor of Schaefer and against the appellants in the amount of $100,700. Appellants claim that the verdict should be set aside for essentially two reasons.

Appellants contend, first, that the verdict is clearly excessive, and therefore it must have been given under the influence of passion or prejudice; and, secondly, that the trial court erred in permitting counsel for Schaefer to inquire of Bonham whether he had pled guilty to a charge of reckless driving. Because of the assignments, we need not concern ourselves with the matter of liability or how the accident occurred, except to note that the accident occurred when Bonham swerved or lost control of the vehicle he was operating, drove over a raised median, and collided with Schaefer's car.

As one would anticipate, the evidence concerning the injury to Schaefer was in dispute and clearly raises a question of fact to be resolved by the jury. It was undisputed that Schaefer was injured as a result of the accident, was confined to bed for a time, and was required to use a cane for some period of time thereafter. According to Schaefer, following the collision he continued to experience back pains and developed a limp which he did not have prior to the collision. Appellants' physician maintains that the limp was not caused by reason of the accident, but by reason of a congenital defect. Appellants' physician did, however, testify that Schaefer had a permanent residual disability of not in excess of 5 percent.

The evidence further establishes that at the time of the accident Schaefer was a high school student who was employed with a roofing company, working part time during the school year and full time during the summer. At the time of the collision Schaefer was earning a net salary of approximately $100 per week. However, as a result of the collision, he was unable to return to work until June of 1976. When he did return, he was earning between $3.50 and $4 per hour. The evidence further discloses that Schaefer left the roofing company because he was unable to perform the work, due to his back injury. He has held a number of other jobs, none of which paid him what he would have earned had he continued to work for

the roofing company. In support of this claim Schaefer offered evidence which disclosed that when Schaefer worked for the roofing company, he worked with an individual by the name of Terry Johnson. In fact, Johnson learned roofing from Schaefer. At the time of the trial Johnson was still in the roofing business, earning approximately $19,000 to $20,000 a year, while Schaefer was earning $14,000 per year as an auto parts employee.

Appellants' argument with regard to the excessiveness of the verdict is based upon the contention that Schaefer alleged in his amended petition loss of wages in an amount of $4,100 and medical expenses to date of trial in the amount of $2,027.04, for a total of special damages not to exceed $6,127.04. Therefore, appellants contend that the jury, not being entitled to return special damages in an amount greater than pleaded, must have returned general damages in an amount nearly equal to $95,000, which is excessive. There is some indication from the argument made by Schaefer's counsel to the jury that the lost wages were in the amount of $39,691, and therefore the general damages would be only slightly more than $50,000. We do not believe, however, that it is necessary for us to attempt to resolve that alleged problem. Even if we assume that of the total award returned by the jury only $6,127.04 was for lost wages and medical bills incurred to date, we cannot say as a matter of law that the award was excessive and the product of passion and prejudice.

There is no formula for computing damages in a case such as this, and the final verdict is usually made up from a number of factors. As a general rule, the law gives the jury the right to determine the amount of recovery in cases such as this, and if the verdict is not so disproportionate to the injury as to disclose prejudice and passion, it will not be disturbed. See *Dunn v. Safeway Cabs, Inc.*, 156 Neb. 554, 57 N.W.2d 75 (1953). The evidence established that in addition to the loss of wages to date of trial,

medical expenses incurred to date of trial, and pain and suffering experienced to date of trial, there could be damages awarded for future medical expenses, loss of future earning capacity, and future pain and suffering. All of those matters, of course, are recoverable under a prayer for general damages. See *Husak v. Omaha National Bank*, 165 Neb. 537, 86 N.W.2d 604 (1957).

Regarding future medical expenses, the amount need not be established with exact certainty. The need for future medical services and the reasonable value thereof may be inferred from proof of past medical services and their value. Nor is direct evidence, according to the general rule, always essential to establish the permanency or future effects of an injury. The test is whether the particular issue can be determined from the evidence presented and the common knowledge and usual experience of jurors. See *Yount v. Seager*, 181 Neb. 665, 150 N.W.2d 245 (1967). With respect to the matter of loss of future earnings, the determination as to the appropriate amount is based upon such factors as the plaintiff's age, life expectancy, health, habits, occupation, talents, skill, experience, training, and industry. See, *Baylor v. Tyrrell*, 177 Neb. 812, 131 N.W.2d 393 (1964); *Siciunas v. Checker Cab Co., Inc.*, 191 Neb. 766, 217 N.W.2d 824 (1974). Future loss of earnings is not necessarily measured by the plaintiff's calling or income at the time of the injury. See *Morford v. Lipsey Meat Co., Inc.*, 179 Neb. 420, 138 N.W.2d 653 (1965). And, finally, with regard to the matter of pain and suffering, we have frequently said that there is no mathematical formula for the translation of pain and suffering and permanent disability into terms of dollars and cents. It is a matter left largely to the discretion of the jury, which saw the witnesses and heard the evidence. See *Zawada v. Anderson*, 181 Neb. 467, 149 N.W.2d 329 (1967).

The evidence discloses that at the time of trial

Schaefer was 24 years of age and had a life expectancy of 48 years. Assuming that Schaefer worked only until the age of 65, he still had 41 more years of earning capacity. The evidence discloses that Schaefer's friend Johnson earned $5,000 a year more than Schaefer at the time of the trial, doing the kind of work that Schaefer would have done but for the accident. If this figure were extended for the remainder of Schaefer's working life, he would have lost $205,000 in future earnings alone. We recognize that this amount would be reduced to present worth. Nevertheless, when this discounted figure is added to what a jury could properly determine could be the amount of pain and suffering, even with a permanent disability of less than 5 percent for 48 years, plus some amount for future medical expenses occasioned by the permanent disability, one cannot say that an award of $100,700 is so excessive under the facts that it could have been the result of passion or prejudice. We believe that appellants' assignment of error in that regard must be overruled.

Turning, then, to the second assignment of error, appellants maintain that Schaefer's counsel committed prejudicial error when he asked Bonham whether he had pled guilty to a charge of reckless driving. Appellants acknowledge that under some circumstances a plea of guilty entered by a defendant in a criminal action may be used against him as an admission in a subsequent action involving the same subject matter. See, *Piechota v. Rapp*, 148 Neb. 442, 27 N.W.2d 682 (1947); Neb. Rev. Stat. § 27-410 (Reissue 1979). Additionally, a violation of a statute or ordinance enacted in the interest of public safety, while not negligence per se, is evidence of negligence. See, *Crandall v. Ladd,* 142 Neb. 736, 7 N.W.2d 642 (1943); *Clark Bilt, Inc. v. Wells Dairy Co.*, 200 Neb. 20, 261 N.W.2d 772 (1978). Appellants argue, however, that repeated interjection of the issue of a plea of guilty into the trial, where there is no evidence whatsoever that the defendant pled

guilty or even that he was ever charged with any violation, much less reckless driving, is error. While that may be true in a particular case, such are not the facts in the instant case.

Our review of the record does not lead us to reach the same conclusion. The questions and answers regarding this matter were as follows: "Q [By Mr. Schrempp] Did you subsequently enter a plea of guilty to a reckless driving charge arising out of this accident? MR. CASHEN: Object to it. No evidence that a reckless driving charge was issued in this instance. I think it's highly improper. . . . THE COURT: The objection is overruled. The witness will answer the question, if he can. . . . THE WITNESS: I do not remember if I got a ticket on the thing. *I think I got a ticket* and during the deposition I thought I might have gotten a ticket for reckless driving, but I do not know. Q (BY MR. SCHREMPP) Do you remember entering a plea of guilty to a reckless driving charge? . . . THE WITNESS: Like I say, I don't remember getting — whether I got a ticket for reckless driving per se or not. *I think I received a ticket for something.* If I did receive it, a ticket, I am sure I did plead guilty to it." (Emphasis supplied.)

It is clear from the answer given by Bonham, known to Schaefer's counsel by reason of Bonham's earlier deposition, that, in any event, Bonham did receive a ticket as a result of the accident and he did plead guilty to the complaint. He does not even deny that the ticket he received may have been for reckless driving; only that he did not recall exactly what it was for. But, in any event, he does acknowledge that he entered a plea of guilty to a charge arising out of the accident. In view of the fact that a violation of a law or ordinance in a proper case is evidence of negligence, even if the ticket were for some infraction other than reckless driving but related to the accident, as apparently it was, a plea of guilty would be an admission and evidence of negli-

gence. While the trial court attempted to minimize the effect of the question by specifically instructing the jury "that there is no evidence that defendant William Bonham was charged with reckless driving, and you will strictly disregard the statement to this effect which was contained in a question by one of the attorneys," neither the question nor the answer, standing alone, was objectionable or improperly prejudicial. Counsel had a right to inquire of this defendant whether he had entered a plea of guilty to the complaint, in view of the fact that he knew from the deposition that a ticket charging some offense had been given. The trial court, therefore, was correct in denying the motion for a new trial on that basis. Appellants' second assignment of error must likewise be overruled, and the judgment is in all respects affirmed.

AFFIRMED.