MARY ANN STEINAUER, APPELLEE, V. SARPY COUNTY,
A POLITICAL SUBDIVISION, APPELLANT.
ERNEST STEINAUER, APPELLEE, V. SARPY COUNTY,
A POLITICAL SUBDIVISION, APPELLANT.

353 N.W.2d 715

Filed July 6, 1984.   Nos. 83-871, 83-872.

Thomas J. Walsh and Betty L. Egan of Walsh, Walentine, Miles, Fullenkamp & O'Toole, and Patrick Kelly, Sarpy County Attorney, for appellant.

Gordon R. Hauptman and Steven D. Wolf of Westergren, Hauptman & O'Brien, P.C., for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

KRIVOSHA, C.J.

Both of the cases involved in this appeal arise out of an automobile-truck collision which occurred on April 16, 1982, at the intersection of 36th Street and Platteview Road in Sarpy County, Nebraska. The suit brought by the appellee Ernest Steinauer, who was the driver of the automobile involved in the accident, is for the damages directly suffered by Steinauer. The suit brought by his wife, Mary Ann Steinauer, is for loss of consortium. With regard to Mr. Steinauer's case, the appellant, Sarpy County, which was at the time of the accident the owner of the truck and the employer of the driver of the truck, has assigned two errors. It claims that the court erred in failing to find that Ernest Steinauer was contributorily negligent and that such contributory negligence was a proximate cause or a proximately contributing cause of the accident, and that the judgment entered on behalf of Steinauer was

clearly exorbitant and excessive. With regard to the suit brought by Mrs. Steinauer, Sarpy County does not contend that the award given to her for loss of consortium was excessive, but it maintains that due to Mr. Steinauer's alleged contributory negligence, she is not entitled to recover at all. Sarpy County concedes that if Mr. Steinauer was not guilty of contributory negligence, then the award to Mrs. Steinauer was appropriate and no error exists. Under our standard of review we believe that the trial court was correct in finding that Mr. Steinauer was not guilty of contributory negligence which was either the proximate cause or a proximately contributing cause of the accident, and we believe that the trial court did not err in the amount of its award. For these reasons the judgment of the trial court in both actions is affirmed.

The evidence discloses that on April 16, 1982, John Nielsen, a Sarpy County employee, was operating a 1976 Mack dump truck owned by the Sarpy County Highway Department. At the time of the collision the truck was loaded with rock and displaced a total weight of 55,900 pounds.

At the intersection of 36th Street and Platteview Road, Platteview is protected by a stop sign. Nielsen was traveling north on 36th Street, and Steinauer, driving a two-door Chevrolet, was traveling west on Platteview Road. The evidence discloses that as Nielsen approached Platteview Road, he stopped, at least momentarily, and, observing no traffic on Platteview Road, including Mr. Steinauer who was clearly there, pulled into the intersection. The left front of the Steinauer vehicle and the right front of the truck collided, causing the truck to turn over onto its side. The front end of the Chevrolet was severely damaged. The evidence indicated that the collision occurred just to the north of the center of Platteview Road. As a result of the accident, Steinauer suffered multiple injuries, including sev-

eral fractures and, most seriously, a closed head injury.

Emergency rescue squads were called to the scene of the accident, and Mr. Steinauer was transferred from the accident scene to St. Joseph Hospital by helicopter, where he was treated in the emergency room. He remained in St. Joseph Hospital and received emergency treatment until June 3, 1982, at which time he was transferred to Immanuel Medical Center for rehabilitation. Mr. Steinauer remained in a semicomatose state during all of the time that he was being treated at Immanuel Medical Center, and, therefore, on October 5, 1982, he was transferred to Methodist Midtown Hospital, where he remained until January 25, 1983, when he was transferred back to Immanuel Medical Center, where intensive efforts at rehabilitation were commenced. In late January 1983 Mr. Steinauer made a sudden and drastic improvement in his awareness and function. He was no longer in a semicomatose condition, and it was for this reason he was transferred back to Immanuel Medical Center.

Despite Mr. Steinauer's continued improvement, most of his bodily functions have been severely impaired, resulting in total and permanent disability. Mr. Steinauer does not have the ability to control his swallowing reflexes, which has led to complications, and further has resulted in a requirement that he be continually fed through a tube inserted into an opening in his abdominal cavity which leads directly to his stomach. He also cannot control his speaking function and can only talk in gutteral sounds. He has very limited use of his right arm and hand and left hand, and can only perform very elementary and perfunctory hygiene tasks, such as shaving and brushing his teeth. Because of his limited ability to move, he has suffered continual problems associated with skin diseases and lung accumulations. He has

no control over his bowel or bladder and must be fitted with an external catheter.

On May 25, 1982, Mr. Steinauer filed a tort claim with Sarpy County. When the county had made no disposition of the claim within 6 months after its filing, Steinauer, as he was authorized by law, withdrew the claim by giving the county written notice and filed an action in the district court for Sarpy County, Nebraska. Sarpy County filed an amended answer in which it generally denied the allegations of the amended petition filed by Steinauer, and specifically alleged, by way of answer, that the injuries resulting from the accident were caused by the negligence and contributory negligence of Steinauer, which negligence was more than slight and sufficient to bar his recovery. Specifically, Sarpy County alleged that Steinauer was negligent in failing to stop his vehicle within the area comprising his range of vision; by traveling at a rate of speed that was imprudent under the then and there existing conditions; by failing to keep a proper lookout; by failing to keep his automobile under reasonable and proper control; and in failing to yield the right-of-way to the defendant's truck. Trial was had to the court without a jury, as is required in tort claim actions, see Neb. Rev. Stat. § 23-2406 (Reissue 1983), and on November 1, 1983, the trial court filed a memorandum opinion finding generally for the plaintiff and against Sarpy County. Specifically, the trial court, in its memorandum, found that

the defendant had failed to prove by a preponderance of the evidence that the plaintiff was negligent in any of the particulars claimed against him by the defendant in paragraph three of its amended answer.

The Court further finds that if there was any negligence on the part of the plaintiff, that it was not the proximate cause or a proximately contributing cause of the accident.

The trial court then set out the various factors which

should be considered in making an award in a case of this type, and without specifically allocating any amount to any factor, it awarded Mr. Steinauer $3.9 million in damages. In Mrs. Steinauer's case the trial court awarded her $275,000 in damages.

Before turning to the two assignments of error claimed by Sarpy County, we review the rules with regard to actions brought pursuant to the Political Subdivisions Tort Claims Act, so that we may properly consider this case pursuant to those rules. To begin with, the findings of the trial court are not to be disturbed on appeal unless clearly wrong. *Hume v. Otoe County*, 212 Neb. 616, 324 N.W.2d 810 (1982); *Rodgers v. Chimney Rock P.P. Dist.*, 216 Neb. 666, 345 N.W.2d 12 (1984). Moreover, when determining the sufficiency of the evidence to sustain the verdict, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in its favor, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence. See, *Brahatcek v. Millard School District*, 202 Neb. 86, 273 N.W.2d 680 (1979); *Lindgren v. City of Gering*, 206 Neb. 360, 292 N.W.2d 921 (1980). And, finally, this court will consider the fact that the trial court saw and heard the witnesses and observed their demeanor, and, therefore, this court will give great weight to the trial court's judgment regarding credibility. See, *Paasch v. Brown*, 199 Neb. 683, 260 N.W.2d 612 (1977); *Ineba Ranch v. Cockerill*, 201 Neb. 592, 271 N.W.2d 44 (1978). With these rules in mind, then, we turn first to Sarpy County's contention that the trial court erred in not finding Mr. Steinauer guilty of contributory negligence *as a matter of law.*

Sarpy County does not dispute that its driver was negligent, nor, in light of the evidence, could it make such a claim. The truckdriver testified that he did not see the automobile until just prior to the impact, though the evidence would indicate that he should have been able to see Steinauer. This court has fre-

quently held that a driver is guilty of negligence as a matter of law if he fails to see one who is favored over him under the rules of the road. See *Bonnes v. Olson*, 197 Neb. 309, 248 N.W.2d 756 (1976). This holding is consistent with the rule that one is legally obligated to keep a proper lookout and that failure to look at a time when looking would have been effective is negligence as a matter of law. See, *Buresh v. George*, 149 Neb. 340, 31 N.W.2d 106 (1948); *Zeiger v. Farmers Co-op Assn.*, 212 Neb. 933, 327 N.W.2d 43 (1982). Futhermore, we have previously and frequently held that the driver of a motor vehicle about to enter a street or highway protected by stop signs is required to come to a full stop as near the right-of-way line as possible before driving onto such street or highway, and, after having stopped, such driver shall yield the right-of-way to any vehicle which is approaching so closely on the favored highway as to constitute an immediate hazard if the driver at the stop sign moves his vehicle into or across such intersection. See *Hartman v. Brady*, 201 Neb. 558, 270 N.W.2d 909 (1978).

The question, then, is whether Mr. Steinauer, in failing to recognize that Nielsen would not honor the right-of-way and would not stop, was contributorily negligent. Generally, one is contributorily negligent if (1) he breaches the duty imposed upon him by the law to protect himself from injury; (2) his actions concur and cooperate with actionable negligence of the defendant; and (3) his actions contribute to the injuries as a proximate cause. See, *Garreans v. City of Omaha*, 216 Neb. 487, 345 N.W.2d 309 (1984); *Mundy v. Davis*, 154 Neb. 423, 48 N.W.2d 394 (1951). In attempting to determine whether Mr. Steinauer was contributorily negligent in light of the elements comprising contributory negligence, we must also keep in mind that a traveler on highways may assume, unless and until he has warning, notice, or knowledge to the contrary, that any other user of the highways will use them in a lawful manner; and

until he has such warning, notice, or knowledge, he may govern his acts in accordance with such assumption. See, *Nichols v. McArdle*, 170 Neb. 382, 102 N.W.2d 848 (1960); *Steinberg v. Pape*, 181 Neb. 806, 150 N.W.2d 912 (1967). Therefore, while the driver on a favored highway must keep a proper lookout, the driver with the right-of-way may nevertheless assume, until he has knowledge to the contrary, that the other vehicles will respect his legal right-of-way. In view of the fact that this case was tried to the court without a jury, the judgment of the trial court can only be wrong if Mr. Steinauer was contributorily negligent as a matter of law. Even if the evidence were sufficient to create a question of fact, it was properly considered by the trial court. It appears to us, therefore, that the real issue in this case concerning the alleged contributory negligence on the part of Mr. Steinauer is whether the trial court was clearly wrong in apparently concluding that Mr. Steinauer was not placed on notice, or with the exercise of reasonable care should have been placed on notice, at a time and place when he might have taken some action to avert the accident. We believe that the evidence in this case supports the trial court's conclusion, and it therefore cannot, as a matter of law, be said to be in error.

As we have noted already, the accident occurred at the intersection of 36th Street and Platteview Road, just slightly north of the center of Platteview Road. Because Mr. Steinauer was not able to communicate and because the driver of the truck testified that he never saw Mr. Steinauer's automobile until just prior to the impact, the only eyewitness testimony regarding this matter was that of a witness, Mrs. Luttman, who was in a vehicle immediately behind the truck. She testified that the truck came to a momentary stop, with the front end of the truck *ahead* of the stop sign. As the truck started to move forward again, she observed the Steinauer vehicle traveling between 45 and 50 m.p.h.

At trial she testified that approximately 3 seconds elapsed between the time the truck started forward and the impact occurred. She had earlier testified in a deposition that the interval was between 5 and 10 seconds. However, she testified at trial that she had returned to the scene of the accident and more accurately measured the time and the distance, and she believed that she had been in error in her earlier testimony and that she was correct with regard to the 3-second interval. Her testimony formed part of the basis for the testimony of plaintiffs' reconstruction expert, Richard Large. As part of his investigation, he went out to the scene with Mrs. Luttman. At the scene Large took several measurements. These measurements indicate that the distance from the stop sign on 36th Street to the point of impact on Platteview Road is 50 feet. The distance from the south edge of Platteview Road to the point of impact is 13½ feet. Relying upon the eyewitness' testimony that the driver stopped the truck in front of the stop sign, Large assumed that the truck stopped 40 feet from the point of impact. Based upon this assumption, he testified that the 40-foot mark is 26½ feet from the edge of the road. Between the edge of the road and the point of impact, there is a distance of 13½ feet. Using certain acceleration tests, he estimated that it would take 3¼ seconds for the truck to reach the edge of the road from its stopped position 40 feet from the point of impact. It would then take the truck three-fourths of a second to travel from the edge of the road to the point of impact. Additionally, assuming a car speed of 50 m.p.h., the Steinauer vehicle would be 293 feet from the impact when the truck started out from the 4-second mark. Therefore, when the automobile was 100 feet from the point of impact, the truck still would not have reached the traveled portion of the highway and the impact would not occur for another 1.3 seconds. Additionally, Large testified concerning the braking distances possible for

Steinauer's vehicle. He testified that at 45 m.p.h. the vehicle would require 104 feet to stop on dry pavement. However, the patrolman investigating the accident testified that the pavement on the day of the accident was wet, and, therefore, Large concluded that the stopping distance on wet pavement was 135 feet. These distances exclude reaction time. He further testified that the minimum reaction time in a simple situation is three-fourths of a second. While Sarpy County's expert maintained that the truck was 50 feet away when it started its movement, rather than 40 feet away, there was no substantial dispute between the experts as to the times involved. Even assuming 50 feet as a starting point, the Steinauer vehicle, traveling at 50 m.p.h., would be 110 feet from the point of impact when the truck reached the edge of the road. While Sarpy County's expert testified that, in his opinion, Steinauer had time to turn north onto 36th Street in order to avoid the collision, the trial court chose to disbelieve this testimony, and we cannot say, as a matter of law, that it was wrong.

The trial court, as finder of fact, could find that Steinauer had every reason to believe that the driver of the truck could see him, because the intersection was virtually unobstructed. It also could find that Steinauer had the right to believe that the driver would yield to his right-of-way and would not move his vehicle across the road in front of him, even though it may have been slowly inching forward in front of the stop sign. The evidence as presented by the eyewitness, and as used by the plaintiffs' expert, was sufficient to permit a finder of fact to conclude that Mr. Steinauer could not reasonably anticipate that the truck was going to move in front of him until it was too late for him to stop within the distance available. Unless it can be said as a matter of law that Steinauer should in some manner have anticipated the truckdriver's negligence and, therefore, proceeded to take some precautionary move, it

is difficult to see how he can be said to have been contributorily negligent as a matter of law. Certainly, we are not prepared to say that the driver of a motor vehicle must slow down at every intersection in anticipation that the driver of the vehicle on the nonfavored street is about to commit a negligent act. We believe that the evidence was sufficient to permit the trial court to find that Steinauer was not guilty of contributory negligence as alleged by Sarpy County.

Having thus disposed of the issue of contributory negligence, we need not give any further consideration to the suit brought by Mrs. Steinauer. Sarpy County acknowledges that the award to her was not excessive, and, absent contributory negligence on the part of Mr. Steinauer, the judgment awarded to Mrs. Steinauer must be affirmed.

We then turn to the final issue before us, whether the award to Mr. Steinauer was excessive and, therefore, improper. While Sarpy County breaks the award down into various amounts and then argues that certain of the breakdowns are excessive, the trial court's award consisted of no such divisions. The award simply recognized the various factors which should be considered, all of which appear appropriate, and then awarded a total amount of $3.9 million. There is no breakdown given by the court as to how the damages were assessed; and while we know what factors the court considered in arriving at the damages, we do not know the exact amount assessed for any particular item making up the total. When Sarpy County, therefore, argues that any single item was excessive, it is engaging in pure speculation.

In *Schaefer v. McCreary*, 216 Neb. 739, 742, 345 N.W.2d 821, 824 (1984), we said:

There is no formula for computing damages in a case such as this, and the final verdict is usually made up from a number of factors. As a general rule, the law gives the jury the right

to determine the amount of recovery in cases such as this, and if the verdict is not so disproportionate to the injury as to disclose prejudice and passion, it will not be disturbed.

Nevertheless, we shall examine the claims made by Sarpy County, although, as we have already noted, we are unable to find in the record evidence that the trial court did anything which could be claimed as error. Sarpy County argues that the appropriate amount of special damages, absent pain and suffering, incurred by Mr. Steinauer as a result of its driver's negligence should not exceed $1.3 million. In arriving at this figure it excludes any sum for loss of earning capacity. Were we to accept Sarpy County's figures, we would then be required to say that a judgment for pain and suffering in this case in the amount of $2.6 million would be so excessive as to require this court to set it aside. We do not believe that there is any legal basis for us to do so. As we have already noted, we have many times held that there is no mathematical formula for translating pain and suffering into terms of dollars and cents. See *Zawada v. Anderson*, 181 Neb. 467, 149 N.W.2d 329 (1967). In awarding damages for physical discomfort and mental anguish, the fact finder must rely upon the totality of the circumstances surrounding the incident. The credibility of the evidence and the witnesses and the weight to be given all of these factors rest in the sound discretion of the fact finder. See *Bishop v. Bockoven, Inc.*, 199 Neb. 613, 260 N.W.2d 488 (1977). To be sure, at some point the verdict may shock the conscience and, therefore, obviously be excessive, but the record in this case does not produce that result. The evidence discloses that we have a 54-year-old man with a normal life expectancy of 20.47 years, absent his injury, and perhaps now an expectancy only of 10 to 15 years by reason of his injury. What is the value of those lost years directly attributable to the negligence of the county's driver? Moreover, the evi-

dence discloses that while Mr. Steinauer was unconscious when he reached the hospital, he did show some reflexive reaction to pain. He began to evidence some signs of improvement in about May or June of 1982, and he experienced reflexive reaction to pain. At times Mr. Steinauer has been agitated and has attempted to remove medical devices attached to his body. The evidence discloses that before the accident Mr. Steinauer was a hard-working man who wanted his children to obtain a college education. His wife could recall only taking two vacations during all the years of their marriage. He enjoyed fishing, hunting, and football. One of his daughters had recently given birth to his first grandchild, with whom Mr. Steinauer enjoyed playing before the accident. After the accident he was unable to play with his granddaughter. He may never taste food again, and he must be subjected to the indignity of being fed through a tube inserted into his stomach. He will be confined to a bed or wheelchair for the rest of his life, and he will never be able to walk, work, or care for himself again. Although he has learned to shave himself and brush his teeth, there is testimony that he has reached the maximum of improvement. He must rely on an external catheter to care for his basic bladder functions and the wearing of a diaper because of his inability to control his bowels. Therefore, even if Sarpy County's figures concerning everything but pain and suffering are adopted, to conclude that the judgment would be excessive is something which this court may not do.

However, an examination of the record discloses that there is at least a bona fide dispute regarding the specials which Sarpy County seeks to reduce, and which, if rejected, would have justified the trial court in awarding an amount greater than that suggested by Sarpy County. As we have already indicated, we have no way of knowing how the trial court arrived at its total verdict. To therefore attempt to sort out the figures requires us to engage

in gross speculation. Nevertheless, accepting the task, as urged by Sarpy County, discloses that the judgment of the trial court must be affirmed.

Sarpy County's first complaint is with regard to future medical expenses. This general complaint can be divided into two categories. One, Sarpy County contends that the verdict is excessive because improper figures were used for inflating and discounting the amount of future medical expenses. Second, Sarpy County argues that the items included in the figure for future medical expenses are based upon improper assumptions. There is no question that Mr. Steinauer is entitled to recover for future medical expenses. It is a fundamental principle of the law of damages that a person who suffers personal injury because of the negligence of another is entitled to recover for the reasonable value of medical care and expenses incurred for the treatment of the injuries incurred to the time of trial, as well as the cost of those reasonably certain to be incurred in the future. See *Stanek v. Swierczek*, 209 Neb. 357, 307 N.W.2d 807 (1981). Additionally, the amount of future medical expenses need not be established with mathematical certainty. In *Schaeffer v. McCreary*, 216 Neb. 739, 743, 345 N.W.2d 821, 824 (1984), we said:

> The need for future medical services and the reasonable value thereof may be inferred from proof of past medical services and their value. Nor is direct evidence, according to the general rule, always essential to establish the permanency or future effects of an injury. The test is whether the particular issue can be determined from the evidence presented and the common knowledge and usual experience of jurors.

Relying upon our decision in *Colvin v. Powell & Co., Inc.*, 163 Neb. 112, 77 N.W.2d 900 (1956), Sarpy County argues that there was a duty on Mr. Steinauer's part to mitigate the cost of medical ex-

penses, both with regard to those incurred to the date of trial and those in the future. While we have previously held that a claimant in a personal injury accident may be required to mitigate the *effects* of his injury by seeking medical care and, if he fails to do so, complications arising because of his failure to seek care may not be compensated, see *Hurlbut v. Landgren*, 200 Neb. 413, 264 N.W.2d 174 (1978), we have never held that an individual must mitigate his *expenses* incurred for medical care by seeking less expensive care than is reasonable under the circumstances. In the instant case there is absolutely no evidence that Steinauer failed to do what the physicians required in order to lessen the effects of his injury. Once it is determined that all of the care was necessary and the costs incurred were reasonable, Mr. Steinauer owed no further duty or obligation to Sarpy County to mitigate the costs of such care by forgoing some of the care because Sarpy County thinks that it was not necessary.

Sarpy County argues that the amount of future medical expenses, the exact amount of which we have no way of determining, is too high. The county bases its claim upon testimony offered by its expert that the amount given by plaintiffs' expert was excessive, because if the money in that fund were put in government investments at the current interest rates, the interest would be sufficient to cover Mr. Steinauer's medical expenses. Furthermore, Sarpy County argues that in the first few years the amount of the fund would exceed the medical expenses and that, therefore, if these additional funds were invested it could eventually be used to pay the medical expenses not covered by the interest on the government investments. While there may be some basis for this argument, which a jury could believe, it appears from the record that there is simply a conflict in the evidence between the experts. Sarpy County argued that the rate of interest would exceed the cost of medical care. Plaintiffs' expert, Dr. Raw-

leigh Ralls, disagreed with that analysis, maintaining that based upon past history, the increase of medical care was greater than the increase in interest rates. Dr. Ralls determined that based upon historical factors during the last 15-year period, medical costs had increased at 3 percent more than interest rates. He used this fact to arrive at the amount of money necessary to provide for future medical expenses. Dr. Ralls also testified that the fund necessary for future medical expenses must be $2.4 million, while the county's expert maintains that a fund of $932,945 would be sufficient. This was a matter for the trier of fact to determine, and where, as here, there appears to be no abuse of discretion, but, rather, a choice of whom to believe, we cannot say that the trial court's determination was error.

A second factor which causes these figures to be so grossly disparate is based upon a conflict in the evidence as to the type of care to be given to Mr. Steinauer. Sarpy County argues that the level of care presently being given Mr. Steinauer will not be necessary in the future. Mr. Steinauer's evidence was to the contrary. This was another matter for the trial court to resolve.

There was likewise a conflict in the evidence as to Mr. Steinauer's life expectancy. There was, however, sufficient evidence to support a life expectancy from as little as 5 years to as much as 15 years, and, again, we do not know what amount of the total verdict the trial court attributed to this aspect.

Sarpy County also complained about the source of nursing care. Plaintiffs' economic expert based the cost of future nursing care on the use of a professional agency providing nursing care. Sarpy County argues that it should not be required to pay for such a service, which includes markup, but, rather, that Mr. Steinauer should be required to go into the market and hire his own nurse and nurse's aide in order to save Sarpy County money. There is no evidence, however, to indicate what that difference

would be, nor is there any evidence to indicate how Mr. Steinauer would be assured of constant care in the event that one of the nurses or nurse's aides hired wanted the day off or wanted to go on vacation or when one of the regular nurses became ill. The evidence was that a service would be responsible for all of these contingencies.

Sarpy County's final complaint regarding future health care concerns the projected cost of nursing care. Sarpy County contends the court ignored the fact that future estimates show problems in health and nursing care which would cause a decrease in the rise of such costs. This, again, is simply a conflict in the evidence and depends upon which expert the court believed.

The second area which Sarpy County argues was improperly awarded is with regard to future earnings. As we have continually pointed out, there is no way of knowing whether the court allowed any amount for future earnings. Nevertheless, we examine the argument as made by Sarpy County. There is no conflict regarding Mr. Steinauer's past wages. Plaintiffs' expert determined that if Mr. Steinauer retired at the age of 65, his future earnings had a value of $187,618.17. Sarpy County argues that the manner in which plaintiffs' expert arrived at this amount was incorrect. The expert took a historical approach to wages. He looked at the local wages and found their increase and then looked at the long-term government interest rate during the same period to determine a discount rate. He then applied the increase and the discount rate to arrive at the number given. Sarpy County argues that plaintiffs' expert should not have used a historical interest rate but, rather, should have used present interest rates for the purpose of discounting. Also, Sarpy County contends that this projection by plaintiffs' expert ignores the current condition in Mr. Steinauer's profession of bricklaying. And, finally,

Sarpy County argues that we should consider the effects of taxation on future earnings.

The first claim is merely another verse of the same song: a conflict in the evidence between two experts, neither being more right than the other. The second claim, concerning the expert's failure to take into account the nature of Mr. Steinauer's profession, while interesting, ignores how loss of future earnings are to be computed. It is not just the actual wages in the future for which compensation is awarded, but it is, as well, the loss of earning capacity or the ability to earn. In *Washington v. American Community Stores Corp.*, 196 Neb. 624, 629, 244 N.W.2d 286, 289 (1976), this court stated:

> Proof of an actual loss of earnings or wages is not essential to recovery for loss of earning capacity. [Citations omitted.] Recovery for loss or diminution of the power to earn in the future is based upon such factors as the plaintiff's age, life expectancy, health, habits, occupation, talents, skill, experience, training, and industry.

The trier of fact could presume that if Mr. Steinauer were not able to continue working in the trade in which he was then engaged, everything else being equal, he could have, nevertheless, continued his ability to earn at some trade to age 65.

And, finally, with respect to the effect of taxation on an award in a case of this nature, we have already decided that the triers of fact are not to take into account the effects of future taxation when awarding damages in a personal injury case. See *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80 (1983).

Sarpy County also challenges the alleged one-time costs incurred, arguing that the amount of one-time costs should not exceed $117,667.50, while Mr. Steinauer's testimony established the amount to be $179,056.79. Once again, we are confronted with the difficult problem of determining which of the two figures the court in fact accepted in making its

award to Mr. Steinauer. Because there was no specific breakdown, to now determine what amount was awarded for such item would be mere speculation. We cannot simply reduce the total amount because of a conflict in the evidence when we do not know what figure the trial court used.

Whether we view the award in its entirety and accept Sarpy County's figures or we accept all of Mr. Steinauer's figures as produced by his experts, or we conclude that the trial court arrived at some middle ground, we are unable to say that the award is unsupported by the evidence or that it is so grossly excessive as to obviously be a product of passion and prejudice requiring a reversal. The amount of the award is large, but the nature of the injuries is equally large. Being unable to say as a matter of law that the award constituted an abuse of discretion and was, as a matter of law, excessive, we are required to affirm the judgment of the trial court. The judgment and order of the trial court are therefore in all respects affirmed.

AFFIRMED.