MOSE M. NEUSBAUM ET AL., APPELLANTS, V. CHICAGO AND NORTHWESTERN RAILWAY COMPANY, APPELLEE.

77 N. W. 2d 299

Filed June 8, 1956. No. 33928.

*R. R. Wellington* and *Charles A. Fisher,* for appellants.

*Neely, Otis & Neely* and *Ernest M. Johnson,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for damages suffered by plaintiff Neusbaum in a crossing accident when a train of defendant struck a truck in which plaintiff Neusbaum was riding. At the close of plaintiffs' case-in-chief the trial court sustained a motion made by defendant and dismissed plaintiffs' action. Plaintiffs appeal. We affirm the judgment of the trial court.

We state the evidence in the light of the established and often repeated rule that in determining such a motion the plaintiff is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can be reasonably deduced from the evidence.

At the place of the accident the tracks of the defendant ran generally east and west. They consisted of a main-line track and to the north thereof a sidetrack with a distance of 6 or 7 feet between the two tracks.

The roadway ran generally from the north to the south, with a slight downgrade to the tracks and at an angle to the southeast. It was a graveled road with

a traveled portion at least 16 feet in width.

To the west of the road and north of the tracks, at the location important here, there was an elevation in the ground. Upon that there was a woven wire fence parallel with the road. Weeds had gathered behind the fence so that for a few feet the view to the west along the defendant's right-of-way was obstructed to a height of about 7 feet above the traveled surface of the road.

The accident happened about 10 a. m. on the morning of November 15, 1951. The sky was cloudy, visibility was good, and there was a wind of 20 to 25 miles an hour.

Plaintiff Neusbaum was an employee of the University of Nebraska, and at the time was engaged in cattle feeding on the Fort Robinson reservation. He and the foreman drove in a southeasterly direction along the road going to cattle enclosures south of the defendant's tracks. They were in a light truck. The foreman was driving. The truck had an enclosed cab. Plaintiff was riding on the right side. The window in the door on that side was closed. The window in the door on the driver's side was partly open.

Both the driver and the plaintiff Neusbaum were well acquainted with the crossing and the general physical characteristics of the land, the fence, the tracks, and the road at that point. They had used that road many times.

The truck stopped with a distance between the bumper and the north rail of the main track of 25 feet, and a distance between that rail and the driver and plaintiff Neusbaum of 33 feet. At that point both the plaintiff Neusbaum and the driver looked to the west. Their visibility of defendant's tracks—being obscured by the weeds—was then about 60 to 80 feet. They heard neither whistle, nor bell, nor sound of a train. They did not see the train.

The driver testified that when down to or on the

side track there was visibility several hundred feet to the west. The plaintiffs' witness, who testified from measurements, stated that if the truck had been on or "approaching" the side track the vision would have been unobstructed.

Having looked and listened as above stated, the driver started across the tracks at a speed of from 3 to 5 miles per hour. The truck could have been stopped in 10 feet. Both driver and plaintiff Neusbaum testified that they never again looked to the west.

The driver testified that he did not look or "I would have seen him when I was on the side track there."

Defendant's train was powered by a steam engine. The truck was hit on the hood on the right side above the right front wheel.

Plaintiffs claim that the issue of proximate cause and contributory negligence were jury questions.

Plaintiffs here base their claim of negligence on two primary facts which they submit the evidence sustains. The first is the claimed negligence of the defendant in permitting the weeds to accumulate along a fence on its right-of-way. The second is the claimed failure to ring a bell or sound a whistle in compliance with section 74-573, R. R. S. 1943. However, the decision here turns on the question of the negligence of the driver of the truck and the negligence of the plaintiff Neusbaum who was riding therein.

In Kepler v. Chicago, St. P., M. & O. Ry. Co., 111 Neb. 273, 196 N. W. 161, we stated this rule: "It is the positive duty of an automobile driver approaching a railroad crossing where there is a restricted vision and where he is familiar with said crossing and its surroundings to look and listen at a time and place where looking and listening will be effective; and failure to observe this rule without reasonable excuse therefor is negligence."

The above rule was followed verbatim in McQuin v. Missouri P. R. R. Corp., 122 Neb. 423, 240 N. W. 515,

and in Mundt v. Chicago, R. I. & P. R. R. Co., 136 Neb. 478, 286 N. W. 691.

In Milk House Cheese Corp. v. Chicago, B. & Q. R. R. Co., 161 Neb. 451, 73 N. W. 2d 679, we restated this rule: "If the operator of a motor vehicle is familiar with a railroad crossing and the surrounding conditions, it is his duty in approaching it to look and listen at a time and place where looking and listening will be effective even though vision of the railroad track is restricted."

But plaintiffs say that those rules deal with the driver of a car and not one who is riding with a driver. They cite decisions dealing with guest cases and imputed negligence. This is not a guest case in that sense. Here plaintiff Neusbaum and the driver were coemployees of the University of Nebraska. The government of the United States owned the truck. They were on a mission to feed and care for cattle. This distinction is pointed out in Kepler v. Chicago, St. P., M. & O. Ry. Co., *supra.* There we said of that case: "The case differs from those in the books where two persons induced by the same considerations drive together in the vehicle of one of them to accomplish an end of common interest."

Seiffert v. Hines, 108 Neb. 62, 187 N. W. 108, is quite comparable to this case. There the rider was killed. Plaintiff was the administrator of his estate. There it was claimed that the negligence of the driver could not be imputed to plaintiff's intestate. There the deceased and the driver were coemployees. There the deceased was familiar with the track in question. There the deceased had a clear opportunity of seeing the approaching train and a "better opportunity" than the driver. These conditions exist in the instant case. We there held, applicable here, that: "In this position, knowing that they were approaching the railroad crossing, it was his duty to look and listen for approaching trains. In this regard the same obligation rested upon

him as though he were driving the car himself."

Moreland v. Chicago & N. W. Ry. Co., 117 Neb. 456, 220 N. W. 692, was a rider case. We there held: "Where it is undisputed that a traveler on a highway failed to exercise reasonable precaution, by not looking at a reasonable point where he could have seen an approaching train, his negligence will defeat a recovery for a collision with a train at a crossing, even though no signal by the locomotive bell or whistle was given."

We have analyzed the cases cited by plaintiffs and defendant. Rules stated in the opinions must be read in the light of the factual situations presented. For instance, in McQuin v. Missouri P. R. R. Corp., *supra,* the accident happened on a dark night. We there pointed out the difference in that situation and those that occurred in the daylight. We do not deem it necessary to cite or discuss other cases.

We find no basis upon which plaintiffs can be held to have a right to prevail.

The judgment of the trial court is affirmed.

AFFIRMED.