BERTHOLD J. GARVIN, ADMINISTRATOR OF THE ESTATE OF LINDA GARVIN, DECEASED, APPELLANT, V. ROBERT COOVER ET AL., SPECIAL ADMINISTRATOR OF THE ESTATE OF RUEBEN A. ANDERSON, DECEASED, APPELLEES.

276 N. W. 2d 225

Filed March 13, 1979. No. 42033.

George H. Moyer, Jr., of Moyer, Moyer & Egley, for appellant.

Deutsch, Jewell, Otte, Gatz, Collins & Domina, for appellees.

Heard before BOSLAUGH, BRODKEY, and HASTINGS, JJ., and CASE and FUHRMAN, District Judges.

HASTINGS, J.

This is an action for damages for the wrongful death of Linda Garvin, the daughter of Berthold J. and LaVerne Garvin, who was killed in an automobile accident on November 17, 1969, in Madison County, Nebraska. The first cause of action was for the recovery of general damages suffered by the next of kin for wrongful death of Linda, and the second cause for the recovery of special damages for funeral and burial expenses in the specified amount of $1,420. The trial court directed a verdict in favor of the defendant Coover on both causes of action and the jury found in favor of plaintiff against the defendant Roush on the first cause of action and assessed the damages at "none," and found in favor of the plaintiff on the second cause and fixed the damages at $1,427. Plaintiff filed a motion for new trial, claiming that the verdict was contrary to the evidence and law in that it was inadequate. No complaint is made of the instructions or any other portion of the trial. The case is submitted on an abbreviated bill of exceptions containing only the testimony of four witnesses, whose testimony is limited to personal facts about the deceased.

Linda Garvin was born on April 21, 1949, and as previously indicated, died on November 17, 1969, at the age of 20 years and approximately 7 months. Although appellant's brief claims, appellees do not deny it, and the trial court instructed that Linda's minority would not have ended until December 25, 1969, that position is based on L.B. 167, Laws 1969,

c. 298, s. 1, p. 1072, Legislature of Nebraska, Eightieth Session, which lowered the age of majority to 20 years. It is true that that session of the Legislature adjourned on September 24, 1969, and laws in the ordinary course of events do not become effective until after the passage of 3 calendar months following adjournment. However, this particular act was passed and then approved on March 13, 1969, with the emergency clause. Therefore, Linda had reached her majority at the time of her death.

The evidence shows that Linda was a bright, considerate, dependable, and loving child who had a variety of interests both in and out of school. She had contributed to the family well-being by helping to care for her sister and brothers who were 3, 5, and 7 years younger than she, and also had helped with other household chores and in a family business activity which involved delivering milk. She graduated from high school and commenced her nurses training at Nebraska Wesleyan University and Bryan Memorial Hospital in August of 1967, and at the time of her untimely death was participating in a 3-month course in psychiatric training at the Hastings Regional Center. Linda's parents had paid approximately $2,500 of her education costs, and apparently she had earned the remainder. Indications were that she would have become a registered nurse sometime during the year 1970.

In view of the fact that Linda had reached her majority at the time of her death, there is nothing to support an award for loss of services during her minority. That would leave only the possibility that Linda would have contributed back something from the benefits of her own education to that of her younger siblings. There was no contract, no definite amount, no particular promise. The only testimony on that point was that in a conversation with her father he said she was going to have to put something back and she said that was fine. A not un-

likely reply from a normal child against the backdrop of that situation.

Up until Selders v. Armentrout (No. 1), 190 Neb. 275, 207 N. W. 2d 686 (1973), the sole measure of damages for the wrongful death of a child, other than loss of services during minority, was the loss of contributions that might reasonably be expected to be made after reaching majority. In the instant case this would include the expectation of a return of any money advanced for Linda's education plus any other amount which might reasonably be expected. See Dorsey v. Yost, 151 Neb. 66, 36 N. W. 2d 574 (1949). However, Selders (No. 1), *supra,* added the additional factors of the loss of the society, comfort, and companionship of the child. Nevertheless, there is still a limitation on such damages. As stated in Ensor v. Compton, 110 Neb. 522, 194 N. W. 458 (1923), which extended our wrongful death statute to include as an element of damage the loss of companionship of a widower's deceased wife, and which was cited and quoted with approval in Selders (No. 1), *supra*: "This change, while significant, does not provide a wide open door to all sorts of claims for damages. The loss under the statute is still a pecuniary loss. Nothing can be allowed on account of mental suffering or bereavement or as a solace on account of such death. Only such damages can be recovered as are shown by the evidence to have a monetary value." Appellant concedes the correctness of this rule in his brief under Proposition of Law I.

Other than the testimony about the education money, both of Linda's parents testified that they gained companionship with her attendance at church, took pride and comfort in her industry and application to her school work, found comfort and companionship from her interest in sewing and music, felt pride and comfort in her interest in sports and family recreation, and in her devotion to her family. If anything, it is probably true that the feeling of

loss which these parents felt at the death of their daughter was understated considering, among other things, that their testimony came some 8 years after their tragedy. The question here which we must answer, however, is whether there was such a reasonable expectation of monetary contributions on Linda's part and a monetary worth which can reasonably be assigned to the loss of her society, comfort, and companionship that we can say the verdict of "none" was so inadequate as to be contrary to the evidence and therefore wrong as a matter of law.

It is virtually impossible to "color match" cases in attempting to decide a given issue. Appellant cites Vandenberg v. Langan, 192 Neb. 779, 224 N. W. 2d 366 (1974), in which something in excess of $32,000 was awarded for the loss of services, contributions, society, comfort, and companionship of a 16-year-old boy; and Caradori v. Fitch, 200 Neb. 186, 263 N. W. 2d 649 (1978), wherein a jury awarded $40,000 for the death of an 11-year-old girl. On the other hand, Dorsey v. Yost, *supra,* involved a zero verdict to cover the loss of services and future contributions of an 11-year-old girl, and in Selders v. Armentrout (No. 2), 192 Neb. 291, 220 N. W. 2d 222 (1974), three verdicts totaling $4,500 involved children, ages 9, 13, and 15 years, with $3,692.10 being apparently included for medical and funeral bills, or a net verdict of less than $300 each for services, contributions, society, comfort, and companionship.

However, one common thread runs throughout all of those cases, namely, that damages in any wrongful death case are incapable of computation and are largely a matter for the jury. In Selders v. Armentrout (No. 2), *supra*, this court said: "The amount which should be awarded in any wrongful death case is incapable of computation and is largely a matter for the jury. As stated in Dorsey v. Yost, 151 Neb. 66, 36 N. W. 2d 574, 14 A. L. R. 2d 544: 'The amount to which a parent is entitled cannot be ac-

curately determined because of the numerous contingencies involved. The amount being very problematical, it is peculiarly for the jury to determine, after hearing all the evidence bearing upon the situation, including the parent's position in life, the physical and mental condition of the child, his surroundings and prospects, and any other matter that sheds light upon the subject. Members of juries generally have children of their own and have information as to the pecuniary value of children's services and the expense involved in their care and education. A jury is peculiarly fitted to determine the loss sustained by a parent in such a case. At best, the verdict can only be an approximation as no yardstick exists by which the correct answer can be found with exactness.'

"The evidence in this case was such that the jury could have concluded the pecuniary loss to the parents, including the value of society and companionship, was relatively small. We are unable to say under all the facts and circumstances the verdicts were inadequate."

From all that appears in the record before us, the case was fairly tried and submitted to the jury under proper instructions, and we are not inclined to disturb its verdict. We conclude, therefore, that the judgment should be affirmed.

AFFIRMED.