IRVIN WOITALEWICZ, APPELLEE, V. WILLIAM M. WYATT, APPELLANT.

428 N.W.2d 216

Filed August 26, 1988.   No. 86-896.

John A. Wagoner and Robert A. Wagoner for appellant.

Denzel R. Busick, of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellee.

Hastings, C.J., Caporale, Grant, and Fahrnbruch, JJ., and John Murphy, D.J.

Murphy, John, D.J.

Irvin Woitalewicz brought an action against William M. Wyatt in the district court for Hall County, claiming that he was injured due to the negligent dental treatment provided by William M. Wyatt for a fractured jaw. The case was tried to a jury, and the jury returned a verdict for Woitalewicz and against Wyatt in the amount of $185,000. Wyatt appeals from that verdict. We affirm.

Although the appellant assigns four errors, two may be joined together for the purposes of this appeal. Appellant claims that the trial court erred in submitting as an element of damages the disability of the plaintiff, Woitalewicz; that the trial court erred in entering judgment on the verdict of the jury when it was evident that the jury ignored the issue of contributory negligence; and that the trial court erred in entering judgment on the verdict of the jury, since the verdict was excessive and the result of passion or prejudice, and in failing to grant a motion for new trial for the same reason.

Woitalewicz was injured in a motor vehicle accident on October 15, 1983. In the accident, he received a bilateral mandibular fracture of his jaw. Two days later, Woitalewicz was referred by his family physician to Wyatt and was examined by him. Woitalewicz was admitted to the hospital, and the

following day, open reduction surgery was performed. During the course of the surgery, Wyatt did not remove two teeth that were in the line of fracture on the right side. Woitalewicz was released from the hospital two days later and was given a prescription for pain medication and Keflex, an antibiotic, by Wyatt. Four days later, Woitalewicz returned to see Wyatt, and drains were installed to relieve swelling due to inflammation or infection. Wyatt did not do a culture of the bacteria involved in the infection at that time or at any time during the course of treatment, and he continued to prescribe Keflex without such a culture.

On October 26, 1983, Woitalewicz returned to his family physician because one of the drains had come out. The drain was replaced, and he continued to see Wyatt until November 28, 1983. During that time, Woitalewicz complained of pain, swelling, a foul taste in his mouth, and looseness in the area of the fracture. On December 5, 1983, Woitalewicz saw Dr. Gregg Peterson, who consulted with Wyatt, advised him that two teeth in the line of fracture might be causing the infection and should be removed, and sent Woitalewicz back to him. On December 12, 1983, Wyatt surgically removed dead bone from the jaw and cleaned out the area of the fracture site, and continued to see Woitalewicz through January 17, 1984. At that time, Woitalewicz left Wyatt's care and returned to Dr. Peterson.

Dr. Peterson performed further surgery on Woitalewicz on February 3 and April 13, 1984. These surgeries were to remove the two teeth in the line of fracture, to remove dead bone, and to graft bone from Woitalewicz' hip to the right jaw. The bone graft was necessary because osteomyelitis developed due to the infection in the area of the original fracture of the jaw on the right side.

Woitalewicz testified about the pain and discomfort he suffered, the medical bills he incurred, the disability he had due to the numbness, or anesthesia, of the lip and face, and the loss of companionship with his wife during the period of time involved.

Expert evidence was adduced that the cause of the osteomyelitis that necessitated the surgery and caused the pain

and suffering and the anesthesia of the lip and face was the negligence of Wyatt in failing to properly treat the infection and in failing to remove teeth in the line of the fracture which was the source of the infection.

Evidence was adduced by Wyatt through an expert witness that his treatment of Woitalewicz was proper and met the applicable standard of care. Further evidence was adduced concerning the alleged contributory negligence of Woitalewicz in failing to properly take the Keflex antibiotic prescribed by Wyatt. The matter was submitted to the jury, with the resultant verdict entered against Wyatt for $185,000.

## DISABILITY

The appellant complains that the trial court should not have submitted the issue of disability as to the loss of future earning capacity to the jury. The simple answer to this contention is that the trial court submitted no question as to loss of earnings, present or future, to the jury. The only element of damages relating to disability was contained in instruction No. 18, adapted from NJI 4.03: "2) The disability (a) to date and (b) reasonable [sic] certain to be experienced in the future." Appellant seems to argue that since there was no economic loss attributable to the permanent injury to the lower lip and face, numbness, or anesthesia, cannot be a disability. While it is true that there is often an economic component to disability, disability standing alone is a compensable element of damages totally separate and apart from loss of earnings or loss of earning capacity.

Woitalewicz testified that he suffered from anesthesia, or numbness; that the numbness caused him not to be aware of his face at times; that he would injure the inside of his mouth by biting it without knowing it; and that when he ate or drank, the food or liquid would often run down the side of his face. There was expert testimony from a Dr. Herbert Bloom that the anesthesia was permanent. He compared the sensation to that any patient receives when dental work is being performed under a local pain block, that is, numbness, drooling, and possibility of injury due to biting the lip or inside of the mouth. There is no question that the jury could properly find that the numbness, or anesthesia, of the lip and face of Woitalewicz was a

compensable disability.

## CONTRIBUTORY NEGLIGENCE

The appellant further contends that the jury ignored the issue of contributory negligence submitted to it. The argument submitted to support this contention is mere conclusion. The appellant's argument essentially is that evidence of contributory negligence was adduced, and the issue was submitted to the jury. Since the jury came in with such a large award, it must have ignored the instruction on contributory negligence. The appellant is really arguing that the verdict is not supported by the evidence. Such an argument cannot withstand scrutiny.

> A verdict should not be set aside where the evidence is in conflict or where reasonable minds may reach different conclusions or inferences, as it is within the jury's province to decide issues of fact. A verdict by a jury based upon conflicting evidence will not be set aside on appeal unless it is clearly wrong.

*Schmidt v. Schmidt*, 228 Neb. 758, 760, 424 N.W.2d 339, 341 (1988).

The jury is presumed to have properly considered the question of contributory negligence submitted to it. The appellant's contention in this regard is without merit.

## EXCESSIVENESS OF THE VERDICT

Appellant's last contention is that the verdict is excessive.

> In awarding damages for physical discomfort and mental anguish, the fact finder must rely upon the totality of the circumstances surrounding the incident. The credibility of the evidence and the witnesses and the weight to be given all of these factors rest in the sound discretion of the fact finder.

*Steinauer v. Sarpy County*, 217 Neb. 830, 841, 353 N.W.2d 715, 723 (1984).

Woitalewicz testified that he was in great pain, suffered from chills and fever, had difficulty sleeping, could do very little work on his farm, and became very grouchy. He underwent two extra surgeries, including a sequestrectomy, or removal of dead bone. He was forced to wear a facial brace he found embarrassing. He underwent a third surgery for a bone graft from his hip to his jaw. Further, he was forced to sleep on the

couch, away from his wife. Woitalewicz' wife testified that due to the pain he became short-tempered and that he was in constant pain throughout the course of treatment. Woitalewicz' daughters testified that their father's disposition was much worse due to the constant pain he suffered. Expert testimony was adduced that the type of pain suffered by Woitalewicz was a deep pain.

In addition to the evidence adduced as to pain and suffering and loss of companionship, the evidence showed that the special damages approached $20,000. There was ample evidence adduced concerning disability.

There is no formula for computing damages in a case such as this, and the final verdict is usually made up from a number of factors. As a general rule, the law gives the jury the right to determine the amount of recovery in cases such as this, and if the verdict is not so disproportionate to the injury as to disclose prejudice and passion, it will not be disturbed.

*Schaefer v. McCreary*, 216 Neb. 739, 742, 345 N.W.2d 821, 824 (1984).

A review of the evidence leads to the inescapable conclusion that the jury had ample evidence in order for it to determine that an award of $185,000 was appropriate. There is nothing to indicate that the award by the jury is the result of either passion or prejudice, nor does the verdict shock the conscience. The verdict is not excessive.

For the reasons set out above, the judgment of the district court is affirmed.

AFFIRMED.